Gen. 275]                                                                 275

# OPEN MEETINGS ACT

**"EXECUTIVE FUNCTION"**

July 28, 1993

*Richard S. McKernon, Esquire*
*Town of Poolesville*

On behalf of the Commissioners of Poolesville, you have requested our opinion about the nature and application of the term "executive function," as defined in §10-502(d) of the State Government Article, Maryland Code ("SG" Article). Specifically, your questions are as follows:

1. Does the Open Meetings Act apply to the Commissioners of Poolesville when they are carrying out an executive function?

2. What are executive functions?

3. What type of notice, if any, must be given to the public when the Commissioners of Poolesville schedule a meeting to carry out an executive function?

4. What is the relationship between the exceptions set out in §10-508(a) and an executive function? Do some of the exceptions describe activities that fall within the term "executive function"?

For the reasons stated below, we conclude as follows:

1. The Open Meetings Act does not apply to the Commissioners of Poolesville when they are carrying out an executive function.

2. The inexact definition of "executive function" does not lend itself to a catalog of activities encompassed by the definition. In general, a public body carries out an executive function whenever (i) it *is not* carrying out an advisory, legislative, quasi-legislative, or quasi-judicial function, as those terms are defined in the Act; and (ii)

it *is* engaged in any part of the process of implementing a statute or other form of preexisting law.

3.     The Open Meetings Act does not require any type of notice if the Commissioners of Poolesville meet to carry out an executive function.

4.     The Open Meetings Act does not apply to a public body that is engaged in an executive function.   Therefore, the Commissioners of Poolesville need not cite an exception in SG §10-508(a) in order to hold a closed meeting about an executive function, even if the activity is encompassed by one of the exceptions.

# I
## Scope of Open Meetings Act

The scope of the Act is set out in SG §10-503:

(a)  Except as provided in subsection (b) of this section, this subtitle does not apply to:

(1) a public body when it is carrying out:

(i)   an executive function;

(ii)  a judicial function; or

(iii) a quasi-judicial function; or

(2) a chance encounter, a social gathering, or other occasion that is not intended to circumvent this subtitle.

(b) The provisions of this subtitle apply to a public body when it is meeting to consider:

(1) granting a license or permit; or

(2)   a   special   exception,   variance, conditional  use,  zoning  classification,  the

> enforcement of any zoning law or regulation,
> or any other zoning matter.

This provision must be read together with SG §10-505, which states that, "[e]xcept as otherwise expressly provided in this subtitle, a public body shall meet in open session." Thus, the determination of the function carried out by the public body – that is, whether the public body is engaged in an executive, judicial or quasi-judicial function – will often be crucial in determining whether a public body that held a closed session did so lawfully. *See generally* Office of the Attorney General, *Open Meetings Act Manual* Ch. 2, at 3-12 (1992). And, since instruments of general government like the Commissioners of Poolesville would never carry out judicial functions and only rarely quasi-judicial ones, the determinative point will often be whether the public body is engaged in an executive function.[1]

If the Commissioners of Poolesville are engaged in an executive function, the Act generally does not apply.[2] If the Commissioners of Poolesville are not engaged in an executive function, then the Act generally applies. In that event, the Commissioners must give proper notice of the meeting, and the meeting must be open unless one of the 14 exceptions in SG §10-508(a) may be invoked.[3]

---

[1] A "judicial function" can be carried out only by elements of the Judicial Branch of State Government. SG §10-502(e). The term "quasi-judicial" function refers to certain adjudicatory proceedings before administrative agencies. SG §10-502(i). This opinion does not discuss whatever quasi-judicial functions the Commissioners of Poolesville might perform.

[2] Under SG §10-502(b), the Act *does* apply to an executive or quasi-judicial function that involves the grant of a license or permit or a zoning matter.

[3] Prior to the 1991 amendments to the Open Meetings Act, the general requirement that, "[e]xcept as otherwise expressly provided in this subtitle, a public body shall meet in open session" was modified by the additional language "whenever the public body is carrying out" an advisory function, a legislative function, or a quasi-legislative function. Former SG §10-505. All three of these terms remain in the definitional

(continued...)

## II

## Nature of "Executive Function"

The definition of "executive function," set out in SG §10-502(d), was left unchanged by the 1991 amendments:

>       (1) "Executive function" means the administration of:
>
>       (i)   a law of the State;
>
>       (ii)  a law of a political subdivision of the State; or
>
>       (iii) a rule, regulation, or bylaw of a public body.
>
>       (2) "Executive function does not include:
>
>       (i)   an advisory function;
>
>       (ii)  a judicial function;
>
>       (iii) a legislative function;
>
>       (iv)  a quasi-judicial function; or
>
>       (v)   a quasi-legislative function.

This "per se exemption for executive functions" was said by the Court of Appeals to be "unique" among the open meetings laws of the 50 states. *Board of County Comm'rs v. Landmark Community Newspapers of Md., Inc.*, 293 Md. 595, 601, 446 A.2d 63 (1982).

---

[3] (...continued)
section of the Open Meetings Act, s*ee* SG §10-502(b), (f), and (j), but they are no longer decisive in terms of a public body's obligation to hold an open meeting. In other words, if a public body is carrying out a function that cannot be categorized under any one of the six defined functions, then its meeting must be open unless one of the exceptions in SG §10-508(a) applies.

Because the affirmative aspect of the definition, "the administration of ... a law ...," is so amorphous, we begin with the comparatively precise negative aspect of the definition. Under SG §10-502(d)(2), if an activity falls within any of the other five functions defined in the Act – advisory, judicial, legislative, quasi-judicial, or quasi-legislative – then perforce it is not "an executive function," even if the activity involves the administration of a law. Whenever the Commissioners of Poolesville enact an ordinance, for example, in one sense they are administering State laws – that is, the constitutional and statutory provisions relating to municipal home rule. But in enacting an ordinance, the Commissioners are "enacting ... a law or other measure to set public policy" and therefore are engaged in a "legislative function" as defined in SG §10-502(f) and not an executive function. *See Landmark Community Newspapers*, 293 Md. at 607 ("entire budgetary process" is quasi-legislative and therefore not executive).

Thus, the first step in the analysis is to consider whether another functional definition fits the activity to be carried out at a meeting. If so, the activity by definition does not involve an executive function, and the Act would apply unless the activity is quasi-judicial and not related to the grant of a license or permit or to any zoning matter. If, on the other hand, a public body conducts business that is not encompassed by the definitions of any of the other functions, the activity would be an executive function – and the Act would not apply – if the activity "looks to or facilitates the administration, execution or implementation of a law already in force and effect." *Scull v. Montgomery Citizens League,* 249 Md. 271, 282, 231 A.2d 92 (1968).

In this passage, the Court of Appeals was describing the "recognized test" for determining whether a municipal ordinance was "legislative" in nature, and therefore subject to referendum, or "executive or administrative," and therefore not. The drafters of the Open Meetings Act of 1977, which originated the functional definitions at issue, presumably were familiar with *Scull*. The portion of the definition of "legislative function" in SG §10-502(b)(1), for example – "approving, disapproving, enacting, amending, or repealing a law or other measure to set public policy" – is quite similar to *Scull's* description of a "legislative" ordinance – "an enactment of general application prescribing a new plan or policy." 249 Md. at 282.

As you point out in your letter, the Court of Appeals applied the test set out in *Scull* to hold that construction of public improvements pursuant to existing law is executive in character. *Eggert v. Montgomery County Council*, 263 Md. 242, 282, A.2d 474 (1971). So, too, is the issuance of previously authorized debt for public works. *City of Bowie v. County Commissioners*, 258 Md. 454, 267 A.2d 172 (1970). In an earlier case, moreover, the Court held that the acquisition of property for county office space is an executive activity. *Hormes v. Baltimore County*, 225 Md. 371, 170 A.2d 772 (1961). In addition, the Open Meetings Compliance Board has held the following activities to be executive functions: a discussion between county commissioners and members of the board of directors of a hospital (Opinion No. 92-2 (October 23, 1992) *reprinted in* 1 *Official Opinions of the Maryland Open Meetings Compliance Board (hereafter "Official Opinions")* 6); the work of a local planning commission (Opinion No. 92-3 (November 9, 1992) *reprinted in* 1 *Official Opinions* 10); the processing of a complaint by an occupational licensing board (Opinion No. 92-4 (November 17, 1992) *reprinted in* 1 *Official Opinions* 13); discussion between county commissioners and school board members over implementation of budget cuts (Opinion No. 93-2 (January 7, 1993) *reprinted in* 1 *Official Opinions* 23); and the investigatory and advisory opinion activities of a local ethics commission (Opinion No. 93-4 (February 24, 1993) *reprinted in* 1 *Official Opinions* 30).

As the Compliance Board continues its work, these examples will multiply. The open-ended nature of the statutory definition, however, precludes any exhaustive list here.

### III

### Notice of Meetings

The requirement that a public body give "reasonable advance notice" of both its open and closed meetings is set out in SG §10-506, part of the Open Meetings Act subtitle. If a public body is engaged in an executive function, "this subtitle does not apply to" the public body. SG §10-503(a)(1)(i).[4] *See Landmark Community Newspapers*, 293 Md. at 605. "Because the Act as a whole is inapplicable, the provisions of the Act governing notice to the public

---

[4] *See* note 2 above.

and voting prior to the conduct of a closed session themselves do not apply." Compliance Board Opinion 93-4, at 2. Hence, when the Commissioners of Poolesville meet to carry out an executive function, they are not required by the Open Meetings Act to provide any notice of the meeting.[5]

As a matter of sound practice, public bodies often give notice of meetings even when the Act does not require them to do so. As a matter of law, however, they are not required to do so by the Open Meetings Act.

## IV

### Exceptions Allowing Closed Meetings

SG §10-508(a) sets out a list of 14 circumstances under which a meeting that is otherwise subject to the Open Meetings Act may be closed. This section also requires certain procedures to be followed before one of the exceptions may be invoked. *See generally Open Meetings Act Manual* at 14-19.

As you point out, many of these exceptions describe activities that appear to be within the executive function. If a public body, for example, is "consider[ing] the acquisition of real property for a public purpose and matters directly related thereto," SG §10-508(a)(3), the public body would ordinarily be doing so in the conduct of an executive function. *See Hormes v. Baltimore County*, 225 Md. at 377-78. Others of these specific exceptions – for instance, those having to do with the administration of examinations, SG §10-508(a)(11), or with the conduct of criminal investigations, SG §10-508(a)(12) – also describe activities that ordinarily constitute executive functions. If the public body is indeed carrying out an activity that is an executive function, even one that is precisely described by an exception in SG §10-508(a), the public body is not subject to the Act and need not invoke the exception. It may simply close the meeting.

---

[5] Your letter advises that no provision in the Poolesville charter or code requires notice under such circumstances.

This construction does not render these exceptions a nullity, however.  Under some circumstances, a public body might be carrying out a quasi-legislative function – in particular, the approving, disapproving, or amending of a budget or contract – involving activities that might otherwise be an executive function. *See* Part II above.  If a public body is considering whether to appropriate money to buy real property, for example, it is engaged in a quasi-legislative function, not an executive function, and therefore might have occasion to invoke the exception in §10-508(a)(3).  If, on the other hand, money were already budgeted for land acquisition and a public body were considering the choice of sites available, then the matter would be an executive function, and the exception in SG §10-508(a)(3) need not be invoked for the public body to hold a closed meeting lawfully.

## V

### Conclusion

The "executive function" component of the Open Meetings Act is probably the most difficult portion of the Act to administer, particular for public bodies like the Commissioners of Poolesville that carry out both legislative and executive functions.  This opinion tries to provide as much guidance as the definition of "executive function" allows.  If an activity does come within the definition, which the Open Meetings Compliance Board in its annual report rightly called "troublesomely vague," any meeting about that activity is outside the Act.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*